STATE OF MAINE                    RECEIVED & FILED          SUPERIOR COURT
ANDROSCOGGIN, SS.                                           CIVIL ACTION
                                    NOV 2 0 2016            DOCKET NO. AUBSC-CV-15-118

                                  ANDROSCOGGIN
CITY OF LEWISTON, *et al.,*        SUPERIOR COURT
                                              )
        Plaintiffs,                           )
                                              )
v.                                            )          ORDER ON DEFENDANTS' MOTION
                                              )          FOR SUMMARY JUDGMENT
ANDROSCOGGIN COUNTY, *et al.,*                )
                                              )
        Defendants.                           )

Twelve of the fourteen municipalities in Androscoggin County[1] have brought suit against

Androscoggin County (the "County") and its seven County Commissioners.[2] Presently before

the court is Defendants' motion for summary judgment on all of Plaintiffs' remaining claims. In

their opposition, Plaintiffs asserts they are entitled to summary judgment in their favor on the

their claim for declaratory judgment against the County.

As discussed in detail below, on Plaintiffs' claim for declaratory judgment against the

County, summary judgment is granted for Defendants in part and Plaintiffs in part. On

Plaintiffs' claim for unjust enrichment against the Commissioners, summary judgment is granted

for Defendants.

---

[1] The twelve Plaintiffs are as follows: the City of Lewiston, the City of Auburn, the Town of Poland, the Town of Lisbon, the Town of Turner, the Town of Durham, the Town of Greene, the Town of Sabattus, the Town of Minot, the Town of Leeds, the Town of Livermore Falls, and the Town of Mechanic Falls. (2d Amend. Compl. 1.) A thirteenth municipality, the Town of Livermore, was dismissed as a plaintiff with prejudice on March 18, 2016. (3/18/16 Order on Mot. Dismiss Pl.)

[2] The seven Androscoggin County Commissioners named as Defendants are as follows: Elaine Makas, Ronald E. Chicoine, Matthew P. Roy, Randall A. Greenwood, Alfreda A. Fournier, Beth C. Bell, and Sally A. Christner (collectively referred to as the "Commissioners" or the "County Commissioners"). (2d Amend. Compl. 1.)

## I.   BACKGROUND

The material facts of this case are largely undisputed. On November 6, 2012, the voters of Androscoggin County approved the adoption of a County Charter. (Defs. Supp'g S.M.F. ¶¶ 1, 20; Pls. Opp. S.M.F. ¶¶ 1, 20; Defs. Ex. 1B.) In June 2013, the Maine Legislature enacted and the Governor approved Resolves 2013, Chapter 62, which directed the County Commissioners to make several amendments to the Androscoggin County Charter, including amendments to § 5.5.3 and § 5.5.4 regarding adoption of the County budget. (Defs. Supp'g S.M.F. ¶¶ 4, 21; Pls. Opp. S.M.F. ¶¶ 4, 21; Defs. Ex. 3); Resolves 2013, ch. 62. On August 14, 2013, the Commissioners in office at that time voted to approve the County Charter as amended by the Resolves 2013, Chapter 62 and to make it the official Charter of Androscoggin County. (Defs. Supp'g S.M.F. ¶¶ 5, 22; Pls. Opp. S.M.F. ¶¶ 5, 22; Defs. Ex. 3A.)

The County Charter sets forth the authority of the Board of County Commissioners (the "Board"), which exercises the legislative powers of the County. (Defs. Supp'g S.M.F. ¶ 6; Pls. Opp. S.M.F. ¶ 6; Defs. Ex. 3B); Androscoggin Cnty. Charter, Art. 2, § 2.3 (Aug. 14, 2013); 30-A M.R.S. § 1302. 'County Commissioners are elected to the Board from several geographic districts within the County. Androscoggin Cnty. Charter, Art. 3, § 3.1.1 (Aug. 14, 2013). The County Charter also sets forth the authority of the Budget Committee, which is made up of two persons from each geographic district selected by the municipal officers of the district.[3] Androscoggin Cnty. Charter, Art. 5, § 5.5.5 (Aug. 14, 2013).

---

[3]  Prior to the adoption of the County Charter, the Androscoggin County Budget Committee and its authority were established by statute. *See* 30-A M.R.S. §§ 721-27. That statute has not been repealed by the Legislature. Neither party has asked the court to determine whether the procedures for adopting a County budget set forth in the County Charter must comply with that statute or whether that statute is superseded by other statutes that permit counties to adopt a charter which may provide other methods for appropriating money for county expenditures.

2

Article 5 of the County Charter defines powers of both the Board and the Budget Committee with regard to County finances. Under Article 5 of the County Charter, the Board is responsible for review of the County's preliminary budget and submission of the preliminary budget to the Budget Committee. *Id.* §§ 5.1, 5.5.1. The Budget Committee has the authority to reject or modify any line item in the budget by an affirmative vote of eleven of its members. *Id.* § 5.5.2. The Budget Committee's proposed budget must include the proposed salaries and benefits for all County elected officials. *Id.* Following a public hearing, the Budget Committee must submit its final proposed budget to the Board, who has the authority to modify the proposed budget and adopt the final budget for the County. *Id.* §§ 5.5.3-5.5.4. The Board is responsible for the final preparation and presentation of the County budget to the citizens and has final authority to appropriate money according to budget. *Id.* §§ 5.1, 5.3.

Section 3.7, under Article 3 of the County Charter regarding the Board of County Commissioners, governs the salaries and benefits of County elected officials and the reimbursement of expenses incurred in performance of official duties. Androscoggin Cnty. Charter, Art. 3, § 3.7 (Aug. 14, 2013). Prior its recent amendment, § 3.7 provided:

> Salaries and benefits of all County elected officials shall be recommended by the Board and approved by a majority plus one vote of the full Budget Committee. Said salary shall constitute full compensation for all services. Reimbursement for reasonable expenses incurred in performance of the officials' duties may be allowed upon formal review and approval by the Board.

*Id.*

On October 29, 2014, the Budget Committee voted to set the County Commissioners' salaries for the fiscal year beginning January 1, 2015, at $3,000 annually, with an additional $500 for the Chair of the Board, and to eliminate health insurance benefits for all Commissioners. (Defs. Supp'g S.M.F. ¶ 26; Pls. Opp. S.M.F. ¶ 26.) On November 19, 2014, the

3

Budget Committee approved a proposed budget for the 2015 fiscal year that incorporated those salary levels and no health insurance benefits for County Commissioners. (*Id.* ¶ 27.)

On November 25, 2014, Commissioners Makas and Bell voted to adopt salaries for County Commissioners higher than those approved by the Budget Committee and to reinstate the Commissioners' health insurance benefits.[4] (*Id.* ¶ 33.) The County Commissioners then voted to adopt a final budget for the 2015 fiscal year that set the Commissioners' salaries at $5,000 annually, with an additional $500 for the Chair, and providing health insurance benefits only for the Commissioners. (*Id.* ¶ 36.)

Commissioners Chicoine, Roy, Fournier, and Christner took office on January 8, 2015. (Defs. Supp'g S.M.F. ¶ 38.) On February 4, 2015, six of the seven County Commissioners voted to send a letter to the municipalities of the County regarding the Commissioners' salaries and benefits. (Defs. Supp'g S.M.F. ¶ 41; Pl. Opp. S.M.F. ¶ 41.) Plaintiffs assert that the Board's letter to the municipalities constitutes a "reaffirmation" of Commissioner Makas's and Bell's November 25, 2014 approval of salaries and benefits higher than those approved by the Budget Committee by the newly elected County Commissioners. (*Id.* ¶ 43.)

The Plaintiff municipalities filed a complaint for declaratory judgment against the County and for breach of fiduciary duty and unjust enrichment against the Commissioners on July 21, 2015. Thereafter, the County Commissioners voted to authorize the County to pay their defense costs to the extent that those costs are not covered by the County Commissioner's Risk Pool insurance. (Defs. Supp'g S.M.F. ¶ 45.) Plaintiffs amended their complaint on August 6, 2015. The court approved Plaintiffs' motion to file a second amended complaint on September 8, 2015.

---

[4] Commissioner Greenwood abstained from voting on the Commissioners' salaries and benefits. (Defs. Supp'g S.M.F. ¶ 34; Pls. Opp. S.M.F. ¶ 34.) Prior to January 1, 2015, there were only three County Commissions elected from three geographic districts. The County Charter adopted in November 2012 expanded the Board to seven Commissioners from seven geographic districts beginning in January 2015. *See* Androscoggin Cnty. Charter, Art. 3, § 3.1 (Aug. 14, 2013).

The court dismissed Plaintiffs' claim for breach of fiduciary duty for failure to state a claim on March 18, 2016. (3/18/16 Order on Defs. Mot. Dismiss 11-12.) In their remaining counts, Plaintiffs generally assert that the Commissioners had no authority under the County Charter to amend the salaries and benefits approved by the Budget Committee, that the Commissioners are not entitled under the County Charter to have the County pay their legal expenses, that the Commissioners' adoption of the County budget violated both the County Charter and Maine statutes, and that the Commissioners have been unjustly enriched by accepting salaries and benefits not approved by the Budget Committee.

In the fall of 2015, during the pendency of this action, the Budget Committee proposed a County budget for the fiscal year beginning January 1, 2016, that again reduced the Commissioners' salaries to $3,000 annually with an additional $500 for the Chair and eliminated their health insurance benefits. (Defs. Supp'g S.M.F. ¶ 47; Pls. Opp. S.M.F. ¶ 47.) On December 15, 2015, the County Commissioners again adopted a final budget setting their salaries at the same levels as 2015. (*Id.* ¶ 51.) However, the County Commissioner voted to eliminate health insurance benefits for all but three of the Commissioners. (*Id.*) Plaintiffs did not move to supplement their complaint to assert these new facts. Plaintiffs purport that their second amended complaint sufficiently challenges not only the Commissioners actions in 2014, but also the "on-going actions of the Commissioners concerning approval of the County budget and the Commissioners' approval of their own salaries." (Pls. Opp. S.M.F. ¶ 52.)

On November 3, 2015, the voters of Androscoggin County approved an amendment to § 3.7 of the County Charter that added the following language:

> Notwithstanding the final authority of the Board of Commissioners over the adoption of the County budget under Section 5.5.4, no increase in the salaries or expansion of benefits of elected officials is effective without the approval of a majority plus one vote of the full Budget Committee.

(Defs. Supp'g S.M.F. ¶¶ 48, 53; Pls. Opp. S.M.F. ¶¶ 48, 53; Defs. Ex. 11E); Androscoggin Cnty. Charter, Art. 3, § 3.7 (Dec. 23, 2015). Because this amendment did not become effective until December 23, 2015, it was not in effect when the Board approved the County budget for the 2016 fiscal year. (Defs. Supp'g S.M.F. ¶ 48; Pls. Opp. S.M.F. ¶ 48; Defs. Ex 11C.) Nevertheless, this amendment appears to clarify the respective authority of the Budget Committee and the Board over the salaries and benefits for the future.

However, this amendment does not resolve the disputes raised by this action. The parties still dispute: (1) the general authority of both the Board and the Budget Committee over the County budget under Article 5 of the County Charter, which has not been altered by the amendment; (2) whether the Board must also obtain approval of the County budget from a "finance committee;" (3) whether the Commissioners' vote in 2014 and 2015 to adopt salaries and benefits higher than those approved by the Budget Committee was improper under the Charter prior to the amendment; (4) whether the Commissioners are entitled to have their excess legal expenses paid by the County; and (5) whether the Commissioners have been unjustly enriched by accepting those salaries and benefits in 2015 and 2016.

Defendants filed their motion for summary judgment on June 30, 2016. Defendants assert there are no genuine issues of material fact and they are entitled to judgment as a matter of law on Plaintiffs' remaining claims for declaratory judgment against the County and unjust enrichment against the Commissioners. (Defs. Mot. Summ. J. 1.) Following an extension of time, Plaintiffs filed their opposition on July 28, 2016. In their opposition, Plaintiffs asserts they are entitled to summary judgment in their favor on their claims for declaratory judgment against the County. (Pls. Opp'n to Defs. Mot. Summ. J. 1.) Plaintiffs seek a judgment declaring the following: (1) under the County Charter, the Budget Committee has authority over all line items

6

in the County budget; (2) under Maine law, the Board must also obtain approval of its budget from a "finance committee;" (3) under the County Charter, all salaries and benefits for County elected officials must be approved by the Budget Committee; and (4) under the County Charter, the County is prohibited from paying the personal legal expenses of the Commissioners to the extent not covered by insurance. (*Id.* at 1-2.) Regarding their claim for unjust enrichment against the Commissioners, Plaintiffs assert there are genuine issues of material fact and that summary judgment must be denied. (*Id.* at 2.) Defendants filed their reply on August 5, 2016.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

Typically on motion for summary judgment, when the moving party's motion is properly supported, the burden then shifts to the non-moving party to respond with specific facts establishing a prima facie case for each element of the claim challenged by the moving party. M.R. Civ. P. 56(e); *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234. If the non-moving party fails to present sufficient evidence of the challenged elements, then the moving party is entitled to a summary judgment. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The court may also order summary judgment against the moving party without the need for a cross-motion by the non-moving party when the undisputed facts are thoroughly

7

explored and there is no genuine issue found. M.R. Civ. P. 56(c); 3 Harvey, *Maine Civil Practice* § 56.10 at 251 (3d ed. 2012).

Regarding Plaintiffs' claim for declaratory judgment against the County, statutory interpretation is a question of law for the court to decide. *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 15, 957 A.2d 94. The interpretation of a charter, like the interpretation of statutes, is also question of law for the court. *McGettigan v. Town of Freeport*, 2012 ME 28, ¶ 13, 39 A.3d 48; *Passamaquoddy Water Dist. v. City of Eastport*, 1998 ME 94, ¶ 5, 710 A.2d 897. Where the material facts are not in dispute, summary judgment is an appropriate devise for isolating and deciding dispositive questions of law. *Magno v. Town of Freeport*, 486 A.2d 137, 141 (Me. 1985); *see* 3 Harvey, *Maine Civil Practice* § 56:1 at 218-19 (3d ed. 2011).

## III.    ANALYSIS

### A.    Declaratory Judgment Claim against the County

Maine's Uniform Declaratory Judgment Act, 14 M.R.S. § 5951 *et seq.*, authorizes the courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 14 M.R.S. § 5953. The court may issue a declaratory judgment whenever "a judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 5957. Any person whose rights, status or other legal relations are affected by a statute or municipal ordinance may seek a declaratory judgment to determine any question of interpretation or validity arising under a statute or ordinance. *Id.* § 5954. Thus, a claim for declaratory judgment is an appropriate method for resolving disputes over the interpretation of a county charter. *See* Horton & McGehee, *Maine Civil Remedies* § 3-2(b) at 38-39 (4th ed. 2004).

8

As previously discussed, Plaintiffs assert that they are entitled to a declaratory judgment against the County deciding whether: (1) under the County Charter, the Budget Committee has final authority over all line items in the County budget; (2) under Maine law, the Board must also obtain approval of its budget from a "finance committee;" (3) under the County Charter, the County must obtain approval of salaries and benefits of County elected officials from the Budget Committee; and (4) under the County Charter, the County is prohibited from paying the personal legal expenses of the Commissioners to the extent not covered by insurance. (Pls. Opp'n to Defs. Mot. Summ. J. 1-2.)

When interpreting a charter, the court applies the same rules of statutory interpretation that it applies to statutes and ordinances. *See McGettigan*, 2012 ME 28, ¶ 13, 39 A.3d 48; *Passamaquoddy Water Dist.*, 1998 ME 94, ¶ 5, 710 A.2d 897. The court first looks to the plain language of the statute in order to effectuate the drafters' intent. *Guar. Tr. Life Ins. Co. v. Superintendent of Ins.*, 2013 ME 102, ¶ 17, 82 A.3d 121. The court examines other indicia of the drafters' intent only when the plain language of the statute is ambiguous. *Berube v. Rust Eng'g*, 668 A.2d 875, 877 (Me. 1995). In the absence of statutory definitions, the court affords statutory terms their plain, common, and ordinary meaning. *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621. In determining a statutes' plain and ordinary meaning, the court must take into account the overall design, structure, and purpose of the aggregate language used. *Id.* All words in a statute must be given meaning. *Cent. Me. Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262. No words are to be treated as mere surplusage. *Id.* However, a plain language interpretation is not the same as a literal interpretation. *Dickau*, 2014 ME 158, ¶ 20, 107 A.3d 621. The court must avoid overly simplistic or overly broad interpretations and shall ignore the literal meaning of phrases if that meaning would defeat the clear intent of the statute.

9

*Id.* ¶¶ 20, 23. The court shall also construe statutory language as to avoid any "absurd, illogical, or inconsistent results." *Cent. Me. Power Co.*, 2013 ME 37, ¶ 8, 68 A.3d 1262.

The court must also construe the statutory language in light of the statute as a whole. *Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621. The court shall take into account the overall subject matter and purpose of the statute as well as the consequences of a particular interpretation. *Id.* If two provisions in a statute appear inconsistent, the court shall construe the statutes as to harmonize them if at all possible. *Yeadon Fabric Domes, Inc. v. Me. Sports Complex, LLC*, 2006 ME 85, ¶ 20, 901 A.2d 200. Moreover, if one provision of a statute deals with a subject in general terms, and another provision deals with a portion of the same subject in more specific terms, the two provisions must be harmonized if possible. *Butler v. Killoran*, 1998 ME 147, ¶ 11, 714 A.2d 129 (citation omitted). However, if any conflict remains, the specific provisions shall control over any general provisions. *Id.*

### 1. *Final Authority over Line Items in the County Budget*

In this case, the court must construe the provisions of the Androscoggin County Charter regarding adoption of the County budget and approval of the Commissioners' salaries and benefits that were in effect in 2014 and 2015 when the budgets at issue in this case were adopted by the Board. Therefore, the court must examine the plain language of the County Charter as amended on August 14, 2013. In construing the plain language of the County Charter, the Charter's own rule of construction states:

> The powers granted by this Charter **shall be construed broadly** in favor of the charter form of government and toward the end of enabling the County to implement municipal programs and services on behalf of its municipalities, ...

Androscoggin Cnty. Charter, Art. 2, § 2.4 (Aug. 14, 2013) (emphasis supplied).

10

As previously stated, Article 5 of the County Charter defines powers of both the Board and the Budget Committee with regard to County finances. Section 5.5.1 of County Charter states:

> The Board shall submit its proposed budget to the Budget Committee in a timely fashion and, in no event, later than 90 days prior to the beginning of the fiscal year.

Androscoggin Cnty. Charter, Art. 5, § 5.5.1 (Aug. 14, 2013). Section 5.5.2 of the County Charter states:

> The Budget Committee shall have the authority to reject or modify any line item in the budget by affirmative vote of 11 of its members. The Budget Committee's *proposed budget* shall include proposed salaries and benefits for elected officials.

*Id.* § 5.5.2 (emphasis supplied). Section 5.5.3 of the County Charter further states:

> When the Budget Committee has completed its deliberations, it shall hold a public hearing to present its *proposed budget*.... After the public hearing, the Budget Committee shall approve a final *proposed budget* and transmit the same to the Board for its approval.

*Id.* § 5.5.3 (emphasis supplied). Section 5.5.4 of the County Charter provides:

> *The Board has the authority to modify the proposed budget* and *the authority to adopt the final budget for the County.* The Board shall act on the proposed budget in a timely fashion and, in any event, shall vote to adopt the *final budget*.... The budget as adopted shall be the *final* authorization for assessment of county taxes... A copy of a *final approved budget* shall be filed with the State Auditor as provided by law.

*Id.* § 5.5.4 (emphasis supplied).

Plaintiffs argue these provisions "should be read to give the Budget Committee authority over any line item and the authority to propose a final budget, while giving [the Board] authority to modify and approve the overall final budget." (Pls. Opp'n to Defs. Mot. Summ. J. 7.) In other words, under Plaintiffs' interpretation of the County Charter, the Board has only the authority to modify the budget as a whole. The Board has no authority to modify individual line items in the

11

proposed budget. Under Plaintiffs' interpretation, final authority over each individual line item in the County budget rests solely with the Budget Committee.

Plaintiffs' interpretation is contrary to the unambiguous language of Article 5 of the County Charter. Article 5 unambiguously states that the Budget Committee has authority to modify line items in only the "proposed budget" and that it shall transmit its "proposed budget" to the Board for its approval. Androscoggin Cnty. Charter, Art. 5, §§ 5.5.1-5.5.4 (Aug. 14, 2013). Nothing in the plain language of Article 5 gives the Budget Committee final authority over line items in the final budget. Under Article 5, the Budget Committee's authority is expressly limited to the "proposed budget."

The plain language of Article 5 of the County Charter gives the Board of County Commissioners broad authority to modify the proposed budget and to adopt the final budget. Article 5 unambiguously states that the Board "has the authority to modify the proposed budget and the authority to adopt the final budget for the County." *Id.* § 5.5.4. Nothing in the plain language of Article 5 prohibits the Board from modifying individual line items in the proposed budget. Therefore, under the plain language of Article 5 of the County Charter, the Board of County Commissioners has broad authority to modify the proposed budget, including individual line items, and to adopt a final budget.

Furthermore, Plaintiffs' interpretation would create an absurd and illogical result. It is unclear how the Board could properly exercise its authority to modify the proposed budget without modifying individual line items. Under Plaintiffs' interpretation, the Board would have the authority to modify the aggregate amount of the budget, but no authority to identify which line items in the budget are subject to its modifications. That would likely result in uncertainty over the appropriations for County departments and personnel or result in surplus funds not

12

allocated to any particular budget items. Such an outcome could not have been intended by drafters of the County Charter. In order for the Board to exercise its authority to modify the proposed budget effectively, the plain language of the County Charter must be interpreted as permitting the Board to modify individual line items.

Therefore, under the plain and unambiguous language of the County Charter, as of August 14, 2013, the Budget Committee had the general authority to modify line items in the proposed budget and to approve a final proposed budget. The Board of County Commissioners had the general authority to modify the proposed budget approved by the Budget Committee, including individual line items, and the authority to adopt the final budget for the County. Because the court finds Article 5 to be plain and unambiguous, the court does not reach other indicia of the drafters' intent. *Berube*, 668 A.2d at 877.

### 2. *Approval of Salaries and Benefits of County Elected Officials*

The Board's authority over the setting of salaries and benefits of elected officials, however, is expressly limited by other provisions in the County Charter. Section 5.5.2 of the County Charter generally states, "The Budget Committee's proposed budget shall include proposed salaries and benefits for elected officials." Androscoggin Cnty. Charter, Art. 5, § 5.5.2 (Aug. 14, 2013). However, § 3.7, under Article 3 of the County Charter regarding the Board of County Commissioners, prior to its recent amendments, explicitly provided:

> Salaries and benefits of all County elected officials shall be recommended by the Board and *approved by a majority plus one vote of the full Budget Committee*. Said salary shall constitute full compensation for all services. …

Androscoggin Cnty. Charter, Art. 3, § 3.7 (Aug. 14, 2013) (emphasis supplied).

The plain and unambiguous language of § 3.7 appears to give the Budget Committee final authority over all salaries and benefits for elected officials. Section 3.7 contains no

13

language limiting the Budget Committee's authority over the salaries and benefits for elected officials. Section 3.7 also contains no language giving the Board any authority to modify the salaries and benefits approved by the Budget Committee. Thus, § 3.7 appears to be in conflict with the general budget procedures outlined in Article 5 of the County Charter, which gives the Board the authority to modify line items in the proposed budget and to adopt a final budget.

Defendants' assert that § 5.5.3 and § 5.5.4 of the County Charter should be interpreted, despite the plain language of § 3.7, to give the Board final authority to modify the salary and benefit levels of elected officials approved by the Budget Committee. (Defs. Mot. Summ. J. 13-14.) Defendants' interpretation would make the salaries and benefits of elected officials like any other line item in the proposed budget, which the Board could then modify before adopting the final budget. However, under Defendants' interpretation, § 3.7 would be a completely unnecessary provision. Because every provision in the County Charter must be given meaning and no provisions may be rendered mere surplusage, the court cannot adopt Defendants' interpretation. *Cent. Me. Power Co.*, 2013 ME 37, ¶ 8, 68 A.3d 1262.

Because every provision in the County Charter must be given meaning, the court must construe § 3.7 and Article 5 of the County Charter as to harmonize them. *Yeadon Fabric Domes, Inc.*, 2006 ME 85, ¶ 20, 901 A.2d 200. In order to harmonize these provisions, § 3.7 must be construed as a limited check against the Board's general authority over the County budget. Therefore, although Article 5 vests the Board with general authority to modify line items in the proposed budget and to adopt the final budget, § 3.7 limits the Board's authority to modify the salaries and benefits of elected officials. Under § 3.7, all salaries and benefits of elected officials must be approved by a majority plus one vote of the full Budget Committee. The Board has no authority to unilaterally modify the salaries and benefits approved the Budget Committee.

14

Even if the court were to find that § 3.7 and Article 5 could not be harmonized, then § 3.7 must be construed to control over Article 5 with regard to the salaries and benefits of elected officials. The plain language of Article 5 describes the respective authority of the Budget Committee and the Board over the County budget in general terms. Section 3.7, on the other hand, specifically addresses the salaries and benefits of County elected officials. Therefore, under the principle that specific statutory provisions must control over general provisions, § 3.7 must be interpreted as controlling the approval of all salaries and benefits of elected officials over the general budget procedures set forth in Article 5. *Butler*, 1998 ME 147, ¶ 11, 714 A.2d 129.

Therefore, the court finds, under the plain language of § 3.7, prior to its recent amendment, all salaries and benefits of elected officials must be approved by a majority plus one vote of the full Budget Committee. The Board had no authority to unilaterally modify the salaries and benefits approved the Budget Committee. Because the plain and unambiguous language of § 3.7 and Article 5 can be harmonized, the court does not reach other indicia of the drafters' intent. *Berube*, 668 A.2d at 877. '

3.      *Approval of the County Budget by a Finance Committee*

Plaintiffs also seek a declaratory judgment that, under 30-A M.R.S. § 1353, the Board must also obtain approval of its budget from a "finance committee." (Pls. Opp'n to Defs. Mot. Summ. J. 2.) Plaintiff asserts the Board's adoption of the County budget in 2014 and 2015 were invalid because the Board failed to obtain approval from a "finance committee" pursuant to § 1353. (*Id.* at 8.)

Section 1353 provides:

A county adopting a charter under this chapter may provide for a method of appropriating money for county expenditures other than the method in sections 2,

701 and 702 [of Title 30-A]. Any alternative method provided must give the county legislative body the authority to appropriate money, according to the budget, which must first be approved by majority vote of the finance committee.

30-A M.R.S. § 1353. There is no dispute that the County Charter provides a method for appropriating money other than the method set forth in 30-A M.R.S. §§ 2, 701-02. (Pls. Add'l S.M.F. ¶ 1; Defs. Reply to Pls. Add'l S.M.F. ¶ 1.) Therefore, the County Charter is subject to the requirements of § 1353. There is also no dispute that the County does not have a "finance committee." (*Id.* ¶ 2.)

Though the County Charter does not use the term "finance committee," the method for appropriating money and the role of the Budget Committee set forth in the County Charter is the same as the method for appropriating money and the role of the "finance committee" described in § 1353. Section 1353 states that a county charter "must give the county legislative body the authority to appropriate money, according to the budget,…" 30-A M.R.S. § 1353. Using identical language, § 5.3 of the County Charter expressly states, "The Board shall have the authority to appropriate money, according to the budget." Androscoggin Cnty. Charter, Art. 5, § 5.3 (Aug. 14, 2013). Section 1353 further mandates that the budget "must *first* be approved by majority vote of the finance committee." 30-A M.R.S. § 1353 (emphasis supplied). Under Article 5, the Budget Committee has the authority to reject or modify any line item in the budget, and after the public hearing, the Budget Committee votes to "approve a final proposed budget," that is then transmitted to the Board for its approval. Androscoggin Cnty. Charter, Art. 5, §§ 5.5.2-5.5.3 (Aug. 14, 2013). Thus, under Article 5 of the County Charter, the County budget is first approved by the Budget Committee.

Furthermore, Section 1353 requires that the county charter specify "the number, term, and method of selection of members of the finance committee." 30-A M.R.S. § 1353(1). One of

the two approved methods for selecting finance committee members is by a caucus and a vote of the municipal officers from each county commissioner district. *Id.* § 1353(1)(B). Section 1353 also mandates that the finance committee must select its own chair, that its members may not serve *ex officio*, and that its members must serve terms covering at least one full budget cycle. *Id.* § 1353(2). Section 1353 also requires that the commissioners "submit a budget estimate to the finance committee in a timely fashion, no later than October 1st for the coming year;" that the county commissioners "provide the committee with necessary clerical assistance, office expenses and meeting space, as well as access to county files and information;" and that the county charter require "the county commissioners to hold one or more public hearings on the county budget estimates before October 1st." *Id.* § 1353(3)-(4).

The Budget Committee established by Article 5 of the County Charter substantially complies with those requirements for a "finance committee." Section 5.5.5 of the County Charter expressly provides that there shall be two Budget Committee members from each commissioner district who shall serve a term of three years. Androscoggin Cnty. Charter, Art. 5, §§ 5.5.5, 5.5.5.5 (Aug. 14, 2013). Section 5.5.5.1 states that Budget Committee members shall be nominated by a caucus of the municipal officers of each district and elected by a vote the municipal officers. *Id.* §§ 5.5.5.1, 5.5.5.2. Section 5.5.1 also provides that the Board "shall submit its proposed budget to the Budget Committee in a timely fashion and, in no event, later than 90 days prior to the beginning of the fiscal year," and that the Board "shall provide the Committee necessary clerical assistance, office expenses, and with meeting space, as well as access to County files and information…" *Id.* § 5.5.1. Section 5.5.2 provides, *"On the call of the Board*, the Budget Committee shall, after public notice, hold a meeting … at least 90 days

17

prior to the commencement of the fiscal year."[5] *Id.* § 5.5.2 (emphasis supplied). Thus, the Budget Committee established by Article 5 of the County Charter operates in the same manner as the "finance committee" described § 1353.

Although Article 5 also gives the Board the authority to modify the proposed budget approved by the Budget Committee, there is no language in § 1353 expressly prohibiting county commissioners from having the authority to modify the budget first approved by the "finance committee." Androscoggin Cnty. Charter, Art. 5, § 5.5.4 (Aug. 14, 2013); 30-A M.R.S. § 1353.

Because the court may disregard the literal meaning of statutory phrases if it would defeat the clear intent of the statute, the court may overlook the fact that the County Charter does not use the term "finance committee." *Dickau*, 2014 ME 158, ¶ 20, 107 A.3d 621. Based on the plain language of § 1353 and the County Charter, the court finds that the Budget Committee established by Article 5 of the County Charter is simply a "finance committee" by another name, and approval of the proposed budget by the Budget Committee satisfies the requirements of § 1353. Therefore, the Board sufficiently complied § 1353 in 2014 and 2015 by obtaining the approval of the proposed budget from the Budget Committee.

---

[5] Section 5.2 of the County Charter provides that the fiscal year for the County shall be the calendar year unless otherwise decided by the Board. Androscoggin Cnty. Charter, Art. 5, § 5.2 (Aug. 14, 2013). Thus, first date of the fiscal year is January 1st. Rule of Evidence 201 permits the court to take judicial notice of any facts that are not subject to reasonable dispute. M.R. Evid. 201. The court takes notice of the fact that 90 days prior to January 1st is October 3rd. Thus, the provisions in Article 5 of the County Charter that require the Board to act at least 90 days prior to the beginning of the fiscal year do not strictly comply with the provisions of § 1353 mandating that the charter require those acts to occur prior to October 1st. However, the County Charter contains a severability provision, which provides that if any part of the Charter is deemed invalid, "the remainder therefore shall remain in full force and effect." Androscoggin Cnty. Charter, Art. 8, § 8.8 (Aug. 14, 2013). Thus, although the "90 days prior" language in Article 5 may be technically inconsistent with § 1353, that does not render the rest of Article 5 invalid. Those dates are simply severable for rest of its provisions. Therefore, Article 5, as a whole, remains valid and sufficiently complies with the requirements of § 1353.

### 4. *Payment of Commissioners' Legal Expenses by the County*

Lastly, Plaintiffs seek a declaratory judgment that, under the County Charter, the County is prohibited from paying the Commissioners' personal legal expenses to the extent not covered by the County's insurance.[6] (Pls. Opp'n to Defs. Mot. Summ. J. 14.) Plaintiffs assert that the County Charter contains no provisions requiring the County to defend or indemnify the Commissioners. (*Id.*) Defendants assert that the Commissioners may authorize the County to pay their legal expenses under § 3.7 of the County Charter. (Defs. Mot. Summ. J. 15.) Defendants also assert that the Commissioners are entitled to indemnification by the County under the Maine Tort Claims Act, 14 M.R.S. § 8101 *et seq.* (*Id.* at 16.)

Section 3.7 of the County Charter, prior to its recent amendment, provided:

> Reimbursement for reasonable expenses incurred in performance of the officials' duties may be allowed upon formal review and approval *by the Board*.

Androscoggin Cnty. Charter, Art. 3, § 3.7 (Aug. 14, 2013) (emphasis supplied). Plaintiffs assert that the Commissioners are not entitled to have the County pay their excess legal expenses under § 3.7 because the Commissioners' legal fees are not "reasonable expenses." (Pls. Opp'n to Defs. Mot. Summ. J. 15.) Plaintiffs argue that "reasonable expenses" are understood to be expenses such as "postage and mileage." (*Id.*) Plaintiffs also assert that the Commissioners' legal expenses were not "incurred in performance of the officials' duties." (*Id.*) According to Plaintiffs, the Commissioners are not being sued for any official acts. (*Id.*) Rather, they are

---

[6] Defendants aver that the County and its Commissioners are insured through a Risk Pool of the Maine County Commissioners' Association. (Defs. Supp'g S.M.F. ¶ 44.) As previously stated, in July of 2015, the County Commissioners authorized the County to assume responsibility for payment of their defense costs to the extent not covered by the County's Risk Pool insurance. (*Id.* ¶ 45.) Defendants further aver that, as of the filing of Defendants' motion for summary judgment, there has been no final determination of the extent to which the County's Risk Pool insurance will pay for the Commissioners' defense costs and that discussions between the County and the Risk Pool remain ongoing. (*Id.* ¶ 46.) Plaintiffs assert that they are not challenging the payment the Commissioners' legal expenses by the Risk Pool. (Pls. Opp'n to Defs. Mot. Summ. J. 16.) Plaintiffs are only challenging whether the Commissioners' are entitled to have their excess legal costs not covered by the Risk Pool paid by the County. (*Id.* at 15-16.)

being sued "for taking money to which they are not entitled." (*Id.*) Plaintiffs cite no authority to support either proposition.

Under the plain language of § 3.7, reimbursement of "reasonable expenses" is permitted solely upon "formal review and approval by the Board." Androscoggin Cnty. Charter, Art. 3, § 3.7 (Aug. 14, 2013). Section 3.7 contains no language defining "reasonable expenses" for purposes the Charter. Section 3.7 contains no language limiting the Board's authority to approve reimbursement. Thus, § 3.7 vests the Board of County Commissioners with broad authority to review and decide whether expenses are "reasonable expenses incurred in performance of the officials' duties."

The parties do not dispute that, in July 2015, the Board authorized the County to pay any legal expenses not covered by the County's Risk Pool insurance. (Defs. Supp'g S.M.F. ¶ 45; Pls. Opp. S.M.F. ¶ 45; Pls. Opp'n to Defs. Mot. Summ. J. 3.) By authorizing the payment of their legal fees, the Board implicitly found that their legal expenses were "reasonable expense" under § 3.7. Because § 3.7 vests the Board with broad authority to approve reimbursement, the Board had the authority under the Charter to make that determination.

Moreover, contrary to Plaintiffs assertion, there is no genuine dispute that the Commissioners are being sued for their performance of an official duty. Article 5 of the County Charter vests the Board with the responsibility to review the County's preliminary budget and submit the preliminary budget to the Budget Committee. Androscoggin Cnty. Charter, Art. 5, §§ 5.1, 5.5.1 (Aug. 14, 2013). The Board is authorized to modify the proposed budget and to adopt the final budget for the County. *Id.* §§ 5.5.3-5.5.4. The Board is responsible for the final preparation and presentation of the County budget and has final authority to appropriate money according to budget. *Id.* §§ 5.1, 5.3. The Commissioners were acting pursuant to that authority

20

when they voted to adopt final budgets for the 2015 and 2016 fiscal years. (Defs. Supp'g S.M.F. ¶¶ 36, 51; Pls. Opp. S.M.F. ¶¶ 36, 51.) Plaintiffs' complaint asserts that the Commissioners' vote to adopt a County budget setting their salaries and benefits higher than those approved by the Budget Committee violated the plain language of the County Charter and Maine law. (2d Am. Compl. ¶¶ 54-68, 77-84.) Although the Board's modification of their salaries and benefits was improper under § 3.7, there is no dispute that the Board was engaged in an official duty under Article 5 of the County Charter when it adopted the final budgets for 2015 and 2016. Thus, there is no dispute that the Commissioners' legal expenses were incurred in performance of their official duty to adopt a County budget.

Therefore, because § 3.7 vests the Board of County Commissioners with broad authority to determine whether expenses are "reasonable" and to approve reimbursement of those expenses, and because there is no dispute that the Commissioners have incurred their legal expenses in the performance of their official duty to adopt a final County budget, the Board of County Commissioner acted within its authority under § 3.7 when it authorized to County to pay the Commissioners' excess legal expenses not cover by the County's Risk Pool insurance. Because the Commissioners were entitled to approve the County's payment of the their legal expenses under § 3.7, the court does not reach Defendants' arguments regarding indemnification under the Maine Tort Claims Act.

B.    Unjust Enrichment Claim against the Commissioners

To succeed on a claim for unjust enrichment, a plaintiff must demonstrate: (1) it conferred a benefit on the defendant; (2) the defendant had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit is under such circumstances as to make

21

it inequitable for the defendant to retain the benefit. *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 27, 973 A.2d 743; *Estate of White*, 521 A.2d 1180, 1183 (Me. 1987).

In support of their motion for summary judgment, Defendants argue that the Commissioners properly earned the salaries and benefits they received under the County budgets, that they acted properly under the Charter in approving their salaries and benefits, and that their February 4, 2015 letter to the municipalities that allegedly "reaffirmed" their decision regarding their salaries and benefits was simply an expression of their opinion on an issue of public concern and protected by their freedom of speech. (Defs. Mot. Summ. J. 18-19.) Thus, according to Defendants, it is not inequitable under the circumstances for the Commissioners to retain their salaries and benefits. (*Id.*) Defendants also assert, as they did in their motion to dismiss, that Plaintiffs unjust enrichment claim merely restates their previously dismissed breach of fiduciary duty claim. (*Id.* at 20.)

In their opposition, Plaintiffs assert that there are genuine issues of material fact regarding the Commissioners' state of mind, specifically whether the Commissioners were acting in good faith when they voted to approve salaries and benefits higher than those approved by the Budget Committee. (Pls. Opp'n to Defs. Mot. Summ. J. 17-19.) Plaintiffs further assert that further discovery is necessary in order to properly address a number of Defendants' assertions in support of summary judgment. (*Id.* at 19-20.)

Neither party has addressed the first two elements of unjust enrichment: (1) whether Plaintiffs conferred a benefit on the Commissioners, and (2) whether the Commissioners had appreciation or knowledge of the benefit. (Defs. Mot. Summ. J. 18-19; Pls. Opp'n to Defs. Mot. Summ. J. 17-20.) Previously, on Defendants' motion to dismiss, this court found that Plaintiffs had sufficiently stated a claim for unjust enrichment because Plaintiffs' second amended

complaint averred that the municipalities provided about 80% of the funding for the County budget and that a benefit had a been conferred on the Commissioners in the form of salaries and benefits that were approved as part of the budget. (3/18/16 Order on Defs. Mot. Dismiss 17-19.) At that time, the court found that these allegations were sufficient, at the least, to survive a motion to dismiss. Upon further reflection, however, the court is now convinced otherwise.

The plain language of the County Charter and the undisputed material facts contained in the summary judgment record demonstrate that the Plaintiff municipalities did not confer any benefit on the Commissioners in the form of salaries and benefits. Under § 2.3 of the County Charter, the Board exercises all legislative functions of the County. Androscoggin Cnty. Charter, Art. 2, § 2.3 (Aug. 14, 2013). Section 5.3 of the County Charter expressly provides, "The Board shall have the authority to appropriate money, according to the budget." Androscoggin Cnty. Charter, Art. 5, § 5.3 (Aug. 14, 2013). On November 25, 2014, the Board of County Commissioners voted to adopt a County budget that set their salaries and benefits for the 2015 fiscal year. (Defs. Supp'g S.M.F. ¶ 36; Pls. Opp. S.M.F. ¶ 36.) On December 16, 2015, the Board of County Commissioners again voted to adopt a County budget that set their salaries and benefits for the 2016 fiscal year. (Id. ¶ 51.)

Although Plaintiffs allege in their complaint that they provide about 80% of the funding for the County budget, the municipalities have conferred nothing on the Commissioners. The plain language of the County Charter and the undisputed material facts demonstrate that it was the County, through the Board's exercise of the County's legislative power, that actually conferred the salaries and benefits on the Commissioners. Because there is no genuine dispute of fact that Plaintiffs did not confer a benefit on the Commissioners, the Plaintiff municipalities have failed to satisfy the first element of a claim for unjust enrichment. Therefore, Defendants

23

are entitled to summary judgment on Plaintiffs' claim against the Commissioner for unjust enrichment.

## IV.    CONCLUSIONS

On Plaintiffs' claim for declaratory judgment against the County, summary judgment is granted for Defendants in part and Plaintiffs in part. The court enters summary judgment on Plaintiffs' claim for declaratory judgment against the County as follows:

(1) Under Article 5 of Androscoggin County Charter, as of August 14, 2013, the Budget Committee had the general authority to reject or modify any line item in the proposed budget and to approve a final proposed budget. The Board of County Commissioners had the general authority to modify the proposed budget, including individual line items, and the authority to adopt the final budget for the County.

(2) Under § 3.7 of the Androscoggin County Charter, as of August 14, 2013, the Budget Committee had final authority to approve the salaries and benefits of all County elected officials, which must be approved by a majority plus one vote of the full Budget Committee. The Board of County Commissioners had no authority to unilaterally modify the salaries and benefits of elected officials approved the Budget Committee.

(3) The Budget Committee established by Article 5 of the Androscoggin County Charter, as of August 14, 2013, complies with the requirements of a "finance committee" set forth in 30-A M.R.S. § 1353. The Board of County Commissioners complied with the requirements of 30-A M.R.S. § 1353 in 2014 and 2015 by obtaining the approval of the proposed budget from the Budget Committee.

(4) The Board of County Commissioner acted within its authority under § 3.7 of the Androscoggin County Charter, as of August 14, 2013, when it authorized to County to pay the Commissioners' excess legal expenses not covered by the County's Risk Pool insurance.

On Plaintiffs' claim for unjust enrichment against the County Commissioners, summary judgment is granted for Defendants.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 11/21/16

_____
Lance E. Walker
Justice, Superior Court

STATE OF MAINE
ANDROSCOGGIN, SS.

RECEIVED & FILED
MAR 2 1 2016
ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AUBSC-CV-15-118

CITY OF LEWISTON, *et al.*,

        Plaintiffs,

        v.

ANDROSCOGGIN COUNTY, *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANTS' MOTION
FOR SANCTIONS

Presently before the court is Defendants' motion for sanctions against Plaintiffs and Plaintiffs' counsel pursuant to Maine Rule of Civil Procedure 11.

On July 21, 2015, twelve of the fourteen municipalities in Androscoggin County filed a compliant against Androscoggin County and its seven County Commissioners asserting claims for declaratory judgment, breach of fiduciary duty, and unjust enrichment. (Compl. ¶¶ 49-73.) Plaintiffs filed an amended complaint containing additional allegations on August 6, 2015. (Amend. Compl. 1.) On August 18, 2015, Plaintiffs filed a motion seeking leave pursuant to Maine Rule of Civil Procedure 15(a) to amend their complaint a second time in order to join an additional plaintiff. (Pls. Mot. Amend. Compl. 1.) The following day, August 19, 2015, Defendants filed a motion to dismiss Plaintiffs' amended complaint and a verified motion for sanctions. (Defs. Mot Dismiss 1; Defs. Mot. Sanctions 1.)

The court granted Plaintiffs motion for leave to file a second amended complaint on September 8, 2015. After an enlargement of time, Plaintiffs filed an opposition to Defendants' motion for sanctions on September 18, 2015. (Pls. Opp'n to Defs. Mot. Sanctions 1.) That same day, Defendants filed a renewed verified motion for sanctions, which reasserts the arguments contained in their earlier motion for sanctions. (Defs. Renewed Mot. Sanctions 1.) Defendants

1

also filed a reply to Plaintiffs' opposition on September 25, 2015. (Defs. Reply to Pls. Opp'n to Defs. Mot. Sanctions 1.)

In the motion for sanctions, Defendants' counsel avers under oath that, in response to both the initial complaint and the amended complaint, "I performed an investigation of the material facts and concluded that there was no good grounds to support many of the allegations or claims" contained in both the complaint and the amended complaint. (Defs. Mot. Sanctions ¶¶ 2, 7.) In their reply to Plaintiffs opposition, Defendants take issue with many of the allegations contained in the second amended complaint, specifically those allegations against the individual County Commissioners. (Defs. Reply to Pls. Opp'n to Defs. Mot. Sanctions 2-5.)

In their opposition, Plaintiffs ask this court impose sanctions on Defendants for filing the motion for sanctions without good grounds to support the motion and for an improper purpose. (Pls. Opp'n to Defs. Mot. Sanctions 7-8.) Plaintiffs assert that Defendants motion for sanctions was filed to delay proceedings and to drive up Plaintiffs' litigation costs. (*Id.*)

Pursuant to Maine Rule of Civil Procedure 11, every pleading must be signed by at least one attorney of record. M.R. Civ. P. 11(a). The signature constitutes a representation that the attorney has read the pleading; that to the best of the attorney's knowledge, information, and belief there are good grounds to support the pleading; and that it is not interposed for delay. *Id.* If a pleading is signed with intent to defeat the purpose of Rule 11, the court may impose appropriate sanctions upon the attorney, the client, or both. *Id.* The purpose of Rule 11 is to impress upon any attorney the seriousness of their obligations. *Paradis v. Webber Hosp.*, 409 A.2d 672, 675 (Me. 1979). However, an attorney need only believe that there are good grounds to support the pleading. *Id.* An attorney has no affirmative duty to ascertain the truthfulness of

2

the client's claims or assess the credibility of the client. *Id.*; 2 Harvey, *Maine Civil Practice* § 11.3 at 399 (3d ed. 2011).

Here, Plaintiffs' counsel had no affirmative duty to verify the accuracy of Plaintiffs' claims before bringing the complaint. Rule 11 only required that Plaintiffs' counsel believe that there existed good grounds to support the complaint. There is no indication in the record before the court that Plaintiffs' counsel signed the complaint in bad faith, not believing that there were good grounds to support the allegations and claims contained in the complaint. The court also declines Plaintiffs' invitation to impose sanctions on Defendants.

Based on the foregoing, Defendants' motion of sanctions against Plaintiffs and Plaintiffs' counsel pursuant to Maine Rule of Civil Procedure 11 is denied.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 3/8/16.

Lance E. Walker
Justice, Superior Court

3

STATE OF MAINE
ANDROSCOGGIN, SS.

RECEIVED & FILED

MAR 2 1 2016

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AUBSC-CV-15-118

CITY OF LEWISTON, *et al.*,

      Plaintiffs,

v.

ANDROSCOGGIN COUNTY, *et al.*,

      Defendants.

)
)
)
)
)
)
)
)
)
)

ORDER ON PLAINTIFFS' MOTION TO
DISMISS THE TOWN OF LIVERMORE
AS A PLAINTIFF

On July 21, 2015, twelve of the fourteen municipalities in Androscoggin County filed a compliant against Androscoggin County and its seven County Commissioners asserting claims for declaratory judgment, breach of fiduciary duty, and unjust enrichment. (Compl. ¶¶ 49-73.) The Town of Livermore ("Livermore") was one of two municipalities that did not join the lawsuit. Plaintiffs filed an amended complaint on August 6, 2015. (Amend. Compl. 1.) Livermore did not join the amended complaint.

Sometime thereafter, Livermore decided it wished to join the lawsuit as a plaintiff. On August 18, 2015, Plaintiffs filed a motion seeking leave pursuant to Maine Rule of Civil Procedure 15(a) to amend their complaint a second time in order to join Livermore as a plaintiff. (Pls. Mot. Amend. Compl. 1.) The following day, August 19, 2015, Defendants filed a motion to dismiss Plaintiffs' amended complaint for failure to state a claim and for failure to join a necessary party and a motion for sanctions. (Defs. Mot Dismiss 1; Defs. Mot. Sanctions 1.)

The court granted Plaintiffs motion for leave to amend the complaint to join Livermore as a plaintiff on September 8, 2015. After an enlargement of time, Plaintiffs filed oppositions to Defendants' motion to dismiss and their motion for sanctions on September 18, 2015. (Pls. Opp'n to Defs. Mot. Dismiss 1; Pls. Opp'n to Defs. Mot. Sanctions 1.)

Plaintiffs now seek to dismiss Livermore as a plaintiff. (Pls. Mot. Dismiss Pl. 1.) On October 22, 2015, Plaintiffs filed a motion to dismiss Livermore without costs and without prejudice. (*Id.*) Plaintiffs assert that Livermore decided it wished to withdrawal from this litigation "[a]fter learning about Defendants' scorched earth litigations tactics," that Livermore "concluded it could not afford endless, expensive litigation," and that Livermore had "succumbed to Defendants' war of attrition." (*Id.* at 1-2.)

Defendants do not oppose Plaintiffs' motion to dismiss Livermore and consent to dismissal without costs. (Defs. Pls. Mot. Dismiss Pl. 1.) However, Defendants object to the dismissal of Livermore without prejudice. (*Id.*) Defendants ask the court to dismiss Livermore with prejudice because, according to Defendants, they do not wish to expand time and money if Livermore "changes its mind for a fourth time and seeks to rejoin the lawsuit." (*Id.*)

Plaintiffs argue that Livermore cannot be dismissed with prejudice because the complaint seeks declaratory judgment and injunctive relief that would apply equally to all municipalities. (Pls. Mot. Dismiss Pl. 2.) In response, Defendants argue that if Plaintiffs assertion is correct, then Livermore is a necessary party and its joinder is required under Maine Rule of Civil Procedure 19(a). (Defs. Pls. Mot. Dismiss Pl. 3.)

When dismissal is sought for fewer than all of the plaintiffs, Maine Rule of Civil Procedure 41(a)(2) provides: "[A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. ... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." M.R. Civ. P. 41(a)(2).

Livermore was one of only two municipalities in Androscoggin County that did not join this litigation as plaintiffs when it was initially commenced. Plaintiff had already amended its

2

complaint once before Livermore sought to join. Plaintiffs had to seek leave to amend their complaint second time in order to join Livermore in this action.

Plaintiffs' motion to dismiss Livermore was filed only 65 days after Plaintiffs' moved to file their second amended complaint in order to join Livermore and only 44 days after the court granted Plaintiffs' motion to file their second amended complaint. Plaintiffs' motion to dismiss Livermore was filed before this court held oral argument or acted on Defendants' motion to dismiss.

The court cannot allow plaintiffs to simply join and withdraw from lawsuits on their whim. Joining a lawsuit after the complaint has already been filed and amended once and then seeking to withdraw roughly two months later is a waste of both the parties' and the court's time and resources.

Therefore, the Town of Livermore is dismissed with prejudice, but without costs.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 3/18/16

Lance E. Walker
Justice, Superior Court

3

STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, SS.                                 CIVIL ACTION
                          RECEIVED & FILED        DOCKET NO. AUBSC-CV-15-118

CITY OF LEWISTON, *et al.,*       MAR 2,1 2016

                             ANDROSCOGGIN
          Plaintiffs,        SUPERIOR COURT
                                        )
     v.                                 )        ORDER ON DEFENDANTS' MOTION
                                        )        TO DISMISS FOR FAILURE TO
ANDROSCOGGIN COUNTY, *et al.,*          )        STATE A CLAIM & FOR FAILURE TO
                                        )        JOIN A NECESSARY PARTY
          Defendants.                   )

Thirteen municipalities in Androscoggin County [1] have brought this action against

Androscoggin County (the "County") and the seven County Commissioners of Androscoggin

County [2] for declaratory judgment, breach of fiduciary duty, and unjust enrichment. Presently

before the court is Defendants motion to dismiss for failure to state a claim upon which relief can

be granted and failure to join a necessary party.

Based on the following, Defendants' motion to dismiss for failure to state a claim is

granted as to Plaintiffs' second claim for breach of fiduciary duty and denied as to Plaintiffs' first

and third claims for declaratory judgment and unjust enrichment. Defendants' motion to dismiss

for failure to join a necessary party is denied.

---

[1] The thirteen Plaintiffs are as follows: the City of Lewiston, the City of Auburn, the Town of Poland, the Town of Lisbon, the Town of Turner, the Town of Durham, the Town of Greene, the Town of Sabattus, the Town of Livermore, the Town of Minot, the Town of Leeds, the Town of Livermore Falls, and the Town of Mechanic Falls. (2d Amend. Compl. 1.)

[2] The seven Androscoggin County Commissioners named in the complaint are as follows: Elaine Makas, Ronald E. Chicoine, Matthew P. Roy, Randall A. Greenwood, Alfreda A. Fournier, Beth C. Bell, and Sally A. Christner (collectively referred to as the "Commissioners" or the "County Commissioners"). (2d Amend. Compl. 1.)

## I. BACKGROUND

In 2012, the voters of Androscoggin County approved the adoption of a County Charter. (2d Amend. Compl. ¶ 27; Defs. Mot. Dismiss Ex. 1B.) Plaintiffs assert that, in order to avoid conflicts of interest, the County Charter provided that a Budget Committee, whose members are appointed by municipalities, was responsible for approving the County budget and setting the salaries and benefits of the County's elected officials. (2d Amend. Compl. ¶ 25.) Section 5.5.3 of the County Charter at that time provided:

> When the Budget Committee has completed its deliberations, it shall hold a public hearing to present its proposed budget.... After the public hearing, the Budget Committee shall adopt a final budget and transmit the same to the Board [of County Commissioners].

Androscoggin Cty., Me., Androscoggin Cty. Charter, Art. V § 5.5.3 (Dec. 26, 2012). Section 5.5.4 of the County Charter at that time provided:

> The Board [of County Commissioners] shall act on the proposed budget in a timely fashion.... The budget as adopted shall be the final authorization for assessment of county taxes... A copy of a final approved budget shall be filed with the State Auditor as provided by law.

Androscoggin Cty., Me., Androscoggin Cty. Charter, Art. V § 5.5.4 (Dec. 26, 2012). Additionally, § 3.7 of the County Charter at that time provided:

> Salaries and benefits of all County elected officials shall be recommended by the Board [of County Commissioners] and approved by a majority plus one vote of the full Budget Committee.

Androscoggin Cty., Me., Androscoggin Cty. Charter, Art. III § 3.7 (Dec. 26, 2012).

In 2013, the Maine Legislature enacted Resolves 2013, Chapter 62. (2d. Amend. Compl ¶ 31.) Resolves 2013, Chapter 62 directed the County Commissioners to make several changes to the Androscoggin County Charter, including amendments to § 5.5.3 and § 5.5.4. Resolves

2

2013, ch. 62. Resolves 2013, Chapter 62 was approved by the Governor on June 21, 2013. *Id.*

Section 5.5.3 of the County Charter now provides:

> When the Budget Committee has completed its deliberations, it shall hold a public hearing to present its proposed budget.... After the public hearing, the Budget Committee shall approve a final proposed budget and transmit the same to the Board [of County Commissioners] for its approval.

Androscoggin Cty., Me., Androscoggin Cty. Charter, Art. V § 5.5.3 (Aug. 14, 2013). Section 5.5.4 of the County Charter now provides:

> The Board [of County Commissioners] has the authority to modify the proposed budget and the authority to adopt the final budget for the County. The Board shall act on the proposed budget in a timely fashion and, in any event, shall vote to adopt the final budget.... The budget as adopted shall be the final authorization for assessment of county taxes... A copy of a final approved budget shall be filed with the State Auditor as provided by law.

Androscoggin Cty., Me., Androscoggin Cty. Charter, Art. V § 5.5.4 (Aug. 14, 2013). Resolves 2013, Chapter 62 did not require the County Commissioners to amend § 3.7 of the County Charter governing the setting of salaries and benefits of elected officials. (2d Amend. Compl. ¶ 36); Resolves 2013, ch. 62.

Plaintiffs allege that, in 2014, the Budget Committee voted to reduced the salaries of the County Commissioners and eliminate their benefits. (2d Amend. Compl. ¶ 44.) Plaintiffs allege that the County Commissioner amended the budget approved by the Budget Committee and voted to adopt a final budget that set their own salaries higher than had been approved by the Budget Committee and reinstated their benefits. (*Id.* ¶¶ 41, 44-45.) Plaintiffs further allege that the County Commissioners did not seek or obtain additional approval of the amendments to the budget setting their own salaries and benefits from the Budget Committee or a Finance Committee. (*Id.* ¶ 46.) Plaintiffs allege that the County operated under the amended budget approved by the County Commissioners and paid salaries and benefits that were not approved by

3

the Budget Committee or a Finance Committee to the County Commissioners during the 2014-2015 fiscal year. (*Id.* 49.)

Plaintiffs filed their initial complaint on July 21, 2015. The Plaintiffs filed an amended complaint on August 6, 2015. On August 18, 2015, Plaintiffs filed a motion for leave to file a second amended complaint in order to join an additional Plaintiff. The following day, August 19, 2015, Defendants filed their motion to dismiss for failure to state a claim and for failure to join a necessary party. Defendants' motion addresses the first amended complaint. (Defs. Mot. Dismiss. 1.) The Court approved Plaintiffs' motion to file a second amended complaint on September 8, 2015.

Plaintiff second amended complaint asserts that the County Commissioners' approval of the amended budget, which set their own salaries and benefits without additional approval from the Budget Committee or a Finance Committee was improper under both the County Charter and 30-A M.R.S. § 1353. (2d Amend. Compl. ¶¶ 54-68.) Section § 1353 of Title 30-A, regarding county finance committees, provides:

> A county adopting a charter under this chapter may provide for a method of appropriating money for county expenditures other than the method in sections 2, 701 and 702. Any alternative method provided must give the county legislative body authority to appropriate money, according to the budget, which must first be approved by majority vote of the finance committee.

30-A M.R.S. § 1353. Plaintiffs' second amended complaint also asserts that the County Commissioners breached their fiduciary duty to the public and were unjustly enriched by their actions. (2d Amend. Compl. ¶¶ 69-84.)

After an enlargement of time, Plaintiffs filed their opposition to Defendants motion to dismiss on September 18, 2015. That same day, Defendants filed a motion to dismiss the second

4

amended complaint, which incorporated by reference the arguments contained in their earlier motion to dismiss. Defendants also filed a reply to Plaintiffs' opposition on September 25, 2015.

On December 15, 2015, Defendants filed a motion to supplement their motion to dismiss, which the court granted on January 20, 2016. According to Defendants' supplement, on November 3, 2015, the voters of Androscoggin County approved an amendment to § 3.7 of the County Charter. (Defs. Mot. to Suppl. Mot. Dismiss 1.) On November 23, 2015, the Governor issued a proclamation announcing the approval of the amendment to the Androscoggin County Charter. (Defs. Reply to Pls. Opp'n to Defs. Mot. to Suppl. Mot. Dismiss Ex. A.) As amended, § 3.7 of the County Charter now provides:

> Notwithstanding the final authority of the Board of Commissioners over the adoption of the County budget under Section 5.5.4, no increase in the salaries or expansion of benefits of elected officials is effective without the approval of a majority plus one vote of the full Budget Committee.

(*Id.*)

## II. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The court shall dismiss a civil action when the complaint fails "to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. The sufficiency of a complaint is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. On a motion to dismiss for failure to state a claim, the facts are not adjudicated. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The court reviews the material allegations in the complaint in the light most favorable to the plaintiff to determine whether the plaintiff would be entitled to relief pursuant to some legal theory. *Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676. Dismissal is warranted when it appears beyond a doubt that the plaintiff

is not entitled to relief under any set of facts that the plaintiff might prove in support of his or her claim. *Id.*

Normally on a motion to dismiss for failure to state a claim, only the facts alleged in the complaint are considered by the court. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. If the court considers material outside of the pleading, the court must convert the motion to dismiss into a motion for summary judgment under Rule 56. M.R. Civ. P. 12(b). However, in limited circumstances, the court may consider certain extraneous documents without converting a motion to dismiss to one for a summary judgment. *Moody*, 2004 ME 20, ¶ 9, 843 A.2d 43. The court may consider "official public documents, documents that are central to the plaintiff's claims, and documents referred to in the complaint, without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *Id.* ¶ 10.

Defendants have submitted numerous extraneous documents in support of their motion to dismiss. (*See* attachments to Defs. Mot. Dismiss.) Plaintiffs' opposition does not object to these documents nor challenge their authenticity. (Pls. Opp'n to Mot. Dismiss.) Defendants also submitted a copy of a proclamation issued by the Governor on November 23, 2015, announcing the ballot referendum amending the Androscoggin County Charter. (Defs. Reply to Pls. Opp'n to Defs. Mot. to Suppl. Mot. Dismiss Ex. A.) Plaintiffs have not challenged the authenticity of this document. Therefore, the court reviewed and considered the following public documents in deciding Defendants' motion to dismiss without converting the motion to one for summary judgment: (1) the November 26, 2012, proclamation by the Governor (Defs. Mot. Dismiss Ex. 1B); (2) the Androscoggin County Charter approved by the voters on November 6, 2012 (*Id.* Ex. 1C); (3) the Resolves 2013, Chapter 62 enacted by the Maine Legislature and approved by the

6

Governor on June 21, 2013 (*Id.* Ex. 3); (4) the amended Androscoggin County Charter enacted on August 13, 2014 (*Id.* Ex. 3B); and (5) the November 23, 2015 proclamation by the Governor (Defs. Reply to Pls. Opp'n to Defs. Mot. to Suppl. Mot. Dismiss Ex. A).

Defendants' motion to dismiss asserts that Plaintiffs' compliant fails to state a claim based on five grounds: (1) Plaintiffs' complaint is time-barred under Maine Rule of Civil Procedure 80B; (2) Plaintiffs' complaint fails to plead sufficient conduct against the individual Commissioners; (3) the Commissioners are immune from Plaintiffs' breach of fiduciary duty claim under the Maine Tort Claims Act; (4) Plaintiffs' unjust enrichment claim is merely a restatement of their defective breach of fiduciary duty claim and their other legal claims; (5) Plaintiffs do not have standing to bring their complaint; (6) Plaintiffs' claims present a non-justiciable political question; and (7) Plaintiffs' claims are not ripe for adjudication. (Defs. Mot. Dismiss 5-14.)

A.     RULE 80B

Plaintiffs' first claim for relief is a claim for declaratory judgment against Androscoggin County. (2d Amend. Compl. ¶¶ 54-68.) Plaintiffs request the court issue a judgment declaring: (1) the legal rights of the parties concerning approval of the county budget and the approval of salaries and benefits for the Commissioners; (2) that Androscoggin County must obtain approval of its budget from the Finance Committee; (3) that the Androscoggin County must obtain approval of salaries and benefits of elected officials from the Budget Committee; and (4) that Androscoggin County is prohibited from paying the personal legal expenses of the Commissioners in this litigation. (*Id.* ¶¶ A-D.)

Defendants assert that Plaintiffs' claim for declaratory judgment is essentially a challenge to the Commissioners' vote to set their salaries and benefits and approve the County budget.

7

(Defs. Mot. Dismiss 5.) Thus, according to Defendants, Plaintiffs' claim is actually a claim for judicial review of governmental action pursuant to Maine Rule of Civil Procedure Rule 80B. (*Id.*) Defendants argue that this claim is time-barred under Rule 80B(b) because Plaintiffs filed their complaint 239 days after the budget vote.[3] (*Id.* at 5-6.)

Generally, Maine Rule of Civil Procedure 80B is the sole means for seeking judicial review of a governmental agency's action or refusal to act. M.R. Civ. P. 80B(a); *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 13, 868 A.2d 172. Unless an applicable statute provides otherwise, a complaint seeking judicial review must be filed within thirty days after notice of the governmental agency's action or refusal to act. M.R. Civ. P. 80B(b). If a party fails to timely seek judicial review of a governmental agency's action pursuant to Rule 80B, the party may not bring an after-the-fact action for declaratory judgment challenging governmental agency action. *Sold, Inc.*, 2005 ME 24, ¶ 15, 868 A.2d 172.

Rule 80B itself does not create judicial authority to review governmental action. *F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 859 (Me. 1992). Rule 80B merely proscribes the procedures when judicial review of governmental action is "provided by statute" or "otherwise available at law." M.R. Civ. P. 80B(a); *F.S. Plummer Co.*, 612 A.2d at 859. Judicial review pursuant to Rule 80B is only available for administrative or quasi-judicial actions. *F.S. Plummer Co.*, 612 A.2d at 859. Judicial review under Rule 80B is not available for challenges to legislative actions by a governmental agency. *Id.*

---

[3] Defendants also argue that Plaintiffs claim for declaratory judgment were filed 707 days after the amendments to the County Charter were enacted on August 14, 2013. (Defs. Mot. Dismiss 5-6.) In their opposition, Plaintiffs assert that they are not challenging the amendments to the County Charter. (Pls. Opp'n to Defs. Mot. Dismiss 4.) Indeed, Plaintiffs' claims do not challenge the validity of the amendments to the County Charter. (2d Amend. Compl. ¶¶ 54-84.)

8

Here, neither Defendants nor Plaintiffs has explicitly cited a statute authorizing judicial review of governmental actions by county commissioners.[4] Judicial review of governmental action is "otherwise available by law" under Rule 80B if review was formerly available at common law under the extraordinary writs of prohibition, mandamus, or certiorari. *York Cty. Bd. of Realtors v. York Cty. Comm'rs*, 634 A.2d 958, 960 (Me. 1993). A writ of mandamus is "[a] writ issued by a court to compel the performance of a particular act by a lower court or a governmental officer or body, [usually] to correct a prior action or failure to act." Black's Law Dictionary 1105 (10th ed. 2014). Actions seeking to require county commissioners or county officials to perform statutory duties were historically in the nature of a writ of mandamus. *York Register of Prob. v. York Cty. Prob. Court*, 2004 ME 58, ¶ 20, 847 A.2d 395. However, the right to judicial review of governmental action under Rule 80B where review is "otherwise available by law" is still limited to agency actions that are quasi-judicial in nature. *Lyons v. Bd. of Dirs. of Sch. Admin. Dist.*, 503 A.2d 233, 236 (Me. 1986); *see also* 52 Am. Jur. 2d *Mandamus* § 95 (2015) (stating that a city or local legislative body may not be compelled to exercise its legislative function by a writ of mandamus).

Here, Plaintiffs' complaint avers that, in 2014, the Budget Committee approved a budget for Androscoggin County setting the Commissioners' salaries and benefits. (2d. Amend. Compl. ¶¶ 41-44.) The complaint avers that the Commissioners improperly amended the budget, set their own salaries and benefits, and approved the amended budget without seeking further the approval of the Budget Committee. (*Id.* ¶¶ 45-46.) The complaint also avers the Commissioners improperly voted to authorize the County to pay their individual legal expenses for defending this lawsuit and to hire the County's law firm to the defend the Commissioners. (*Id.* ¶ 53.)

---

[4] The only statute that appears to possibly provide for judicial review of actions by county commissioners is 30-A M.R.S. § 1325, which is discussed in more detail below.

9

The County Commissioners are a legislative body and approving the budget was a legislative act. Section 1302 of title 30-A explicitly states that the County Commissioners "exercise legislative powers within the county." 30-A M.R.S. § 1302(1). Article 2 of Title 30-A, §§ 721-27, establishes the "method for *appropriating* money for Androscoggin County expenditures, including the salaries for county officers, according to a budget that must be first adopted by a budget committee and must then be submitted to the county commissioners." 30-A M.R.S. § 721 (emphasis supplied). Section 5.3 of the Androscoggin County Charter authorizes the Board of Commissioners "to *appropriate* money, according to the budget." Androscoggin Cty., Me., Androscoggin Cty. Charter, Art. V § 5.3 (Aug. 14, 2013) (emphasis supplied). The appropriation of money for a particular purpose is a legislative act. *See* Black's Law Dictionary 123 (10th ed. 2014). Thus, the County Commissioners are a legislative body and their approval of the budget and their own salaries and benefits was a legislative act. Because Plaintiffs' claim for declaratory judgment challenges a legislative act by the County Commissioners, Plaintiffs claims are not governed or time-barred by Rule 80B.

Furthermore, even if Plaintiffs claims were governed by Rule 80B, Plaintiffs may still be permitted to collaterally attack the Commissioners' actions. "Subject to equitable defenses, including laches, a governmental action may be challenged at any time, as ultra vires, when the action itself is beyond the jurisdiction or authority of the administrative body to act." *Sold, Inc.*, 2005 ME 24, ¶ 12, 868 A.2d 172. Here, Plaintiffs allege that the County Commissioners acted beyond their authority by approving a budget setting their own salaries and benefits without further approval from the Budget Committee or a Finance Committee and for voting to have the County pay their personal legal expenses. (2d Amend. Compl. ¶¶ 41-46, 53.) Therefore, subject

10

to equitable defenses, Plaintiffs may still pursue their claim for declaratory judgment against Androscoggin County.

B.     The Maine Tort Claims Act

Plaintiffs' second claim for relief asserts a claim for breach of fiduciary duty against the individual Commissioners. (2d Amend. Compl. ¶¶ 69-76.) Plaintiffs assert that the Commissioners are trustees of the public and that they own a fiduciary duty to the public. (*Id.* ¶¶ 70-72.) Plaintiffs claim that the Commissioners breached this duty by setting and reaffirming their own salaries and benefits without further approval from the Budget Committee and by receiving those salaries and benefits. (*Id.* ¶¶ 73-75.) Plaintiffs aver that they have been damaged by the Commissioners' collection of salaries and benefits. (*Id.* ¶ 76.) Defendants argue that the individual Commissioners are immune from Plaintiffs' claim for breach of fiduciary duty under the Maine Tort Claims Act, 14 M.R.S. § 8101 *et seq.* (the "MTCA"). (Defs. Mot. Dismiss 9-11.)

The complaint does not explicitly assert whether the seven County Commissioners are being sued in the official or personal capacities. (2d Amend. Compl. ¶¶ 69-76.) If the Commissioners are being sued in their official capacity, "[s]uits against employees in their official capacities are essentially suits against the government entities for which they work...." *Brown v. Osier*, 628 A.2d 125, 128 (Me. 1993). Under the MTCA, all government entities, including county governments, are immune from tort suits seeking to recover damages, unless immunity has been waived. 14 M.R.S. §§ 8102(2), (3), 8103. Though the MTCA waives immunity under certain circumstances, governmental entities are absolutely immune from liability that results from the "[u]ndertaking or failing to undertake any legislative or quasi-legislative act,..." *Id.* §§ 8104-A, 8104-B(1).

11

If the Commissioners are being sued in their personal capacity, the Commissioners are employees of a governmental entity. *Id.* § 8102(1), (2), (3). Employees of a governmental entity are "absolutely immune from personal civil liability" arising from certain circumstances, including the "[u]ndertaking or failing to undertake any legislative or quasi-legislative act,..." *Id.* §8111(1)(A).

As discussed above, the County Commissioners are a legislative body and approving the County budget and setting their own salaries and benefits were legislative acts of appropriating money. Therefore, regardless of whether the County Commissioners are being sued in the official or personal capacity, the individual County Commissioners are immune from Plaintiffs' claim for damages under the MTCA. Accordingly, Plaintiffs' second claim for breach of fiduciary duty against the individual County Commissioners fails to state a claim upon which relief can be granted.[5]

C.    Plaintiffs' Standing

Defendants also assert that Plaintiffs do not have standing to bring any of their claims because Plaintiffs have failed to plead a particularized injury.[6] (Defs. Mot. Dismiss 12.)

    1.    *30-A M.R.S. § 1325*

To begin with, the court notes that 30-A M.R.S. § 1325 appears to limit standing for seeking a declaratory judgment regarding county charters to only ten voters of the county or the Attorney General. Section 1325 provides that the court may enforce Chapter 11 of Title 30-A

---

[5] Defendants second argument in support of their motion to dismiss asserts that Plaintiffs' claim for breach of fiduciary duty against the individual Commissioners does not set forth sufficient facts establishing the necessary elements of a breach of fiduciary duty. (Defs. Mot. Dismiss 7-9.) Because the court finds that the individual Commissioners are absolutely immune from Plaintiffs' claim for breach of fiduciary duty under the MTCA, the court does not address Defendants' second argument.

[6] Because the individual Commissioners are immune from Plaintiffs' claim for breach of fiduciary duty, the court addresses only Plaintiffs' standing to bring claims for declaratory judgment and unjust enrichment.

12

regarding county charters "upon petition of 10 voters of the county or on petition of the Attorney General." 30-A M.R.S. § 1325(1). Section 1325 also permits only the Attorney General or, with leave of court, ten voters of the county to bring an action for declaratory judgment on behalf of the public. *Id.* §1325(2). Because the Plaintiffs are municipalities, it appears that they to do not have statutory standing to seek a declaratory judgment under § 1325.

Courts have yet to addressed § 1325. However, the Law Court has addressed 30-A M.R.S. § 2108, which governs judicial review of home rule charters. The language of § 2108 is identical to § 1325. In *Ten Voters of the City of Biddeford v. City of Biddeford*, the Law Court clarified that § 2108 only provided statutory standing for ten voters of the county or the attorney general to challenge an ordinance adopted by the charter commission in the absence of an injury when the challenge is brought within thirty days of its enactment. *Ten Voters of the City of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 6, 822 A.2d 1196. Section 2108 did not effect whether the plaintiffs had an independent basis for standing to seek a declaratory judgment. *Id.* ¶¶ 6-7. In *School Committee of York v. Town of York*, the plaintiff conceded that they did not comply with §2108 because they were neither the Attorney General nor ten voters of the county. *Sch. Comm. of York v. Town of York*, 626 A.2d 935, 937, 942 (Me. 1993). The Law Court held that, even though the plaintiff was neither the attorney general nor ten voters of the county, the plaintiff could still seek a declaratory judgment, provided that the plaintiff established a justiciable controversy. *Id.* at 942. Therefore, based on the Law Court's holdings in *Ten Voters of the City of Biddeford* and *School Committee of York*, which analyzed identical statutory language, the fact that Plaintiffs in this case do not comply with § 1325 does not deprive them of the ability to seek a declaratory judgment, provided they have an independent basis for standing.

13

## 2. *Plaintiffs' standing to seek a declaratory judgment*

Under Maine's Uniform Declaratory Judgment Act, 14 M.R.S. § 5951 *et seq.*, courts have the authority "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 14 M.R.S. § 5953. The court may issue a declaratory judgment whenever "a judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 5957. Any person whose rights, status or other legal relations are affected by a statute or municipal ordinance may seek a declaratory judgment to determine any question of construction or validity arising under a statute. *Id.* § 5954.

Unlike other causes of action, there is no requirement that a particularized injury has been suffered or wrong inflicted in order to maintain a declaratory judgment action. Horton & McGehee, *Maine Civil Remedies* § 3-1(c) at 33 (4th ed. 2004). In order to maintain an action for declaratory judgment, the plaintiff need only demonstrate the existence of a justiciable controversy. *Sch. Comm. of York*, 626 A.2d at 942. To demonstrate a justiciable controversy, the plaintiff must establish (1) the existence of a "real and substantial controversy," and (2) that the plaintiff has standing to raise the issue. *Id.*

Defendants' motion to dismiss does not dispute that there is a "real and substantial controversy" between the parties. Defendants' challenge only Plaintiffs' standing to bring their claims for relief. In order for a plaintiff to have standing to raise an issue in a declaratory judgment action, the plaintiff must establish that they have "'a claim of right buttressed by a sufficiently substantial interest to warrant judicial protection.'" Horton & McGehee, *Maine Civil Remedies* § 3-1(c) at 33-34 (quoting *Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 595 (Me. 1986)).

14

The courts may raise the issue of whether a plaintiff has standing to invoke judicial relief on their own motion at any time. *Smith v. Allstate Ins. Co.*, 483 A.2d 344, 346 (Me. 1984). In *City of Bangor v. Penobscot County*, the county established an emergency communication service for the county and funded the service through county taxes. *City of Bangor v. Penobscot Cty.*, 2005 ME 35, ¶ 5, 868 A.2d 177. The city filed an action seeking a declaratory judgment that, under the applicable statute, the county could not fund the emergency communication service through county taxes. *Id.* ¶ 6. Neither the trial court nor the Law Court ever questioned whether the city had standing to seek a declaratory judgment regarding how the county funded the emergency communication service or how the county appropriated county taxes. *Id.* ¶¶ 7, 16-17. Both courts reached the merits of the city's claim for declaratory judgment. *Id.*

Here, viewing the allegations in the complaint in the light most favorable to Plaintiffs, the complaint sets forth sufficient allegations demonstrating that Plaintiffs have "sufficiently substantial interest" in obtaining a declaratory judgment. In their complaint, Plaintiffs aver that the municipalities of Androscoggin County provide about 80% of the funding for the County's budget. (2d Amend. Compl. ¶ 24.) Plaintiffs further allege that the County Commissioners amended the County budget and set their own salaries and benefits without seeking additional approval from the Budget Committee or a Finance Committee and voted to have the County pay their own legal expenses in this litigation. (*Id.* ¶¶ 41-46, 52.) Plaintiffs assert that the County Commissioners' actions were not in accordance with sections § 5.5.3 and § 3.7 of the County Charter and 30-A M.R.S. §1353. (*Id.* ¶¶ 28-29, 41-46, 57-59.) Plaintiffs seek a declaratory judgment that Androscoggin County must obtain approval of its budget from a Finance Committee, that the salaries and benefits of elected officials must be approved by the Budget Committee, and that Androscoggin County is prohibited from paying the legal expenses of the

15

Commissioners (*Id.* ¶¶ B-D.) Because the municipalities allegedly provide 80% of the funding for the County's budget, Plaintiffs have a "sufficiently substantial interest" in ensuring that the County Commissioners follow proper procedure for approving the budget, approving their salaries and benefits, and appropriating County funds. Thus, like the municipality in *City of Bangor v. Penobscot County*, Plaintiffs may seek a declaratory judgment against the County. Therefore, Plaintiffs have pled sufficient facts to establish standing to bring this action for declaratory judgment.

### 3. *Plaintiffs' standing to bring a claim for unjust enrichment*

Defendants argue that Plaintiffs lack standing to bring a claim for unjust enrichment against the County Commissioners because they are municipalities and they have not conferred a benefit on the County Commissioners. (Defs. Mot. Dismiss 13.) Rather, according to Defendants, it is the County that has conferred the benefit on the Commissioners. (*Id.*)

Generally, a plaintiff must demonstrate that they have suffered a "particularized injury" in order to have standing to bring their claim. *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 11, 26 A.3d 794. A plaintiff has suffered a "particularized injury" when the defendant's actions have "adversely and directly" affected the plaintiff's "property, pecuniary or personal rights." *Id.*

In *Inhabitants of Stonington v. Inhabitants of Deer Isle*, the plaintiff municipality and several taxpayers sued another municipality seeking a declaratory judgment that the cost-sharing arrangement for funding the community school district was unconstitutional and for reimbursement of the excess costs allegedly charged to the plaintiff municipality. *Inhabitants of Stonington v. Inhabitants of Deer Isle*, 403 A.2d 1181, 1183 (Me. 1979). The Law Court decided that it did not need to reach the individual taxpayers' claims because the municipality was a proper plaintiff. *Id.* at 1181 n.1. Thus, the plaintiff municipality had standing to seek both

16

declaratory judgment and reimbursement. *Id.* Similarly, in *Town of West Bath v. Regional School Unit 1*, a municipality sued a regional school unit and three other municipalities. *Town of W. Bath v. Reg'l Sch. Unit 1*, 2013 Me. Super. LEXIS 285, at *1-2 (June 7, 2013). The plaintiff municipality sought a declaratory judgment against the regional school unit that it had overcharged the plaintiff for its allocation of local costs for the regional school unit and undercharged other municipalities. *Id.* The plaintiff also brought a claim of unjust enrichment against the other municipalities seeking reimbursement of the windfall each municipality allegedly received as a result of being under-assessed by the regional school unit. *Id.* The court held that the municipality had standing bring both its claim for declaratory judgment and its claim for unjust enrichment. *Id.* at *21-22.

Here, Plaintiffs' complaint alleges that the municipalities provide about 80% of the funding for the County's budget. (2d Amend. Compl. ¶ 24.) Plaintiffs further allege that a benefit was conferred on the Commissioners in the form of salaries and benefits that were approved as part of the budget. (*Id.* ¶¶ 41-46, 78-79, 81.) Plaintiffs allege the Commissioners' collection of salaries and benefits was improper and in violation of the County Charter and 30-A M.R.S. § 1353. (*Id.* ¶¶ 28-29, 41-46, 57-59, 80, 82.) Accordingly, Plaintiffs have pled sufficient facts demonstrating that they have a pecuniary interest in the Androscoggin County budget. Therefore, like the plaintiff municipalities in *Inhabitants of Stonington v. Inhabitants of Deer Isle* and *Town of West Bath v. Regional School Unit 1*, Plaintiffs having standing to bring a claim for unjust enrichment.

D.    Plaintiffs' Unjust Enrichment Claim

Defendants' motion to dismiss generally asserts that Plaintiffs' unjust enrichment claim must be dismissed because it is merely restates Plaintiffs' defective breach of fiduciary duty

17

claim. (Defs. Mot. Dismiss 11.) Defendants cite *WahlcoMetroflex, Inc. v. Baldwin*, 2010 ME 26, ¶¶ 20-23, 991 A.2d 44, in which the Law Court applied Delaware law, for the proposition that a claim for unjust enrichment cannot survive when it rests on the same allegations as a defective breach of fiduciary duty tort claim. (Defs. Reply to Pls. Opp'n to Defs. Mot. Dismiss 6-7.) In *WahlcoMetroflex*, the Law Court held that, under Delaware law, an unjust enrichment claim cannot survive as a substantive claim when it merely restates the plaintiff's tort claim for breach of fiduciary duty, and that it could not survive as an equitable claim when the plaintiff had an adequate remedy at law in its breach of fiduciary duty claim. *Id.* ¶¶ 21-23. Defendants have not cited any case applying Maine law upholding the proposition that an unjust enrichment claim cannot survive as a substantive claim when it relies on the same facts a plaintiff's tort claim.

Defendants also argue that Plaintiffs are precluded from seeking equitable relief under a theory of unjust enrichment because Plaintiffs failed to timely seek an adequate remedy at law under Rule 80B. (Defs. Mot. Dismiss 12); *see Fisher v. Dame*, 433 A.2d 366, 371 (Me. 1981).

As discussed above, Rule 80B does not govern Plaintiffs' claim for declaratory judgment because Plaintiffs' claim challenges a legislative action. Thus, Plaintiffs' claims are not barred by Rule 80B(b). Furthermore, because Defendants are immune from Plaintiffs' breach of fiduciary duty claim under the MTCA, Plaintiffs do not have an adequate remedy at law. Therefore, Plaintiffs are not precluded from seeking equitable relief.

To establish a claim for unjust enrichment, the plaintiff must demonstrate the following elements: (1) that they conferred a benefit on the defendants, (2) that the defendants had an appreciation or knowledge of the benefit, and (3) that the benefit was under such circumstances

18

to make it inequitable for the defendant to retain the benefit. *Me. Farmers Exch. v. Farm Credit of Me.*, 2002 ME 18, ¶ 12 n.6, 789 A.2d 85.

Here, Plaintiffs' complaint avers that the municipalities provide about 80% of the funding for the County's budget. (2d Amend. Compl. ¶ 24.) Plaintiffs aver that a benefit was conferred on the Commissioners in the form of salaries and benefits that were approved as part of the budget. (*Id.* ¶¶ 41-46, 78-79, 81.) Plaintiffs allege the Commissioners' collection of those salaries and benefits was improper and in violation of the County Charter and 30-A M.R.S. § 1353. (*Id.* ¶¶ 28-29, 41-46, 57-59, 80, 82.) Plaintiffs asserted the Commissioners voted to confer the alleged benefit upon themselves. (*Id.* ¶¶ 78-79.) Plaintiffs assert that it is unjust and inequitable for the Commissioners to retain the benefit. (*Id.* ¶¶ 83-84.) Therefore, Plaintiffs' complaint sufficiently sets forth elements of a claim for unjust enrichment.

E.   Political Question Doctrine

Defendants also argue that Plaintiffs' complaint asserts a non-justiciable political question because it challenges an act by the Maine Legislature, Resolves 2013, Chapter 62, enacted on June 21, 2013. (Defs. Mot. Dismiss 14-16.) In their opposition, Plaintiffs assert that their complaint does not seek any relief related to Resolves 2013, Chapter 62. (Pls. Opp'n to Defs. Mot. Dismiss 16.) Indeed, none of Plaintiffs claims for relief challenge Resolves 2013, Chapter 62. (2d Amend. Compl. ¶¶ 54-84.) Therefore, contrary to Defendants argument, Plaintiffs' complaint does not assert a non-justiciable challenge to an act by the Maine Legislature.

F.   Effect of the Referendum to Amend the Androscoggin County Charter

Lastly, Defendants motion to dismiss initially argued that Plaintiffs' claims were not ripe for adjudication because, at the time the motion was filed, the ballot referendum to amend § 3.7

19

of the Androscoggin County Charter was pending and would be put to the Androscoggin county voters during November 2015 election. (Defs. Mot. Dismiss 17-18.)

The voters of Androscoggin ultimately approved the referendum and the Governor issued a proclamation announcing the amendment on November 23, 2015. (Defs. Reply to Pls. Opp'n to Defs. Mot. To Suppl. Mot. Dismiss Ex. A.) Defendants now argue that this amendment clarifies that, going forward, increases in the salaries and benefits of elected officials must be independently approved by the Budget Committee. (Defs. Mot. Dismiss 17-18; Defs. Reply to Pls. Opp'n to Defs. Mot. To Suppl. Mot. Dismiss 1-2.) In order words, Defendants argue that the amendment to the County Charter now moots Plaintiffs' claims.

Actions for declaratory judgment are generally limited to anticipatory challenges that address ongoing justiciable controversies between the parties, not after-the-fact challenges. *Sold, Inc.*, 2005 ME 24, ¶¶ 10, 14, 868 A.2d 172. However, subject to equitable defenses such as laches, a declaratory judgment action asserting that a government agency's action was beyond its jurisdiction or authority may be brought "at any time." *Id.* ¶ 12.

Here, viewing the complaint in the light most favorable to the Plaintiffs, the complaint alleges that the County Commissioners amended and approved the County budget and set their own salaries and benefits without seeking additional approval from the Budget Committee or a Finance Committee and voted to have the County pay their own legal expenses in this litigation. (*Id.* ¶¶ 41-46, 52.) Plaintiffs assert that the County Commissioners' actions did not comply not with 30-A M.R.S. §1353 and § 5.5.3 of the County Charter as well as §3.7 before it was amended. (*Id.* ¶¶ 28-29, 41-46, 57-59.) Not only do Plaintiffs seek a declaratory judgment that Androscoggin County must obtain independent approval of the salaries and benefits for elected officials from a Budget Committee; Plaintiffs also seek a declaratory judgment that

20

Androscoggin County must obtain independent approval of its budget from a Finance Committee and that Androscoggin County is prohibited from paying the legal expenses of the Commissioners. (*Id.* ¶¶ B-D.)

Therefore, because declaratory judgments asserting that a governmental agency's action were beyond its authority may be brought at any time and because Plaintiffs complaint also seeks a judgment declaring the Commissioners must comply with other statutes and Charter provisions in addition to § 3.7, the court finds that Plaintiffs claims have set forth sufficient facts to, at least, survive a motion to dismiss.

Based on the foregoing, Plaintiffs' complaint sufficiently sets forth claims for declaratory judgment and unjust enrichment. However, Defendants are immune from Plaintiffs' claim for breach of fiduciary duty. Therefore, Plaintiffs' second claim for relief fails to state a claim upon which relief can be granted.

## III. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY

Also before the court is Defendants' motion to dismiss Plaintiffs' complaint pursuant to Maine Rule of Civil Procedure 12(b)(7). (Defs. Mot. Dismiss 18-19.) Under Rule 12(b)(7), the court shall dismiss a civil action when the complaint fails to join a necessary party under Rule 19. M.R. Civ. P. 12(b)(7). Maine Rule of Civil Procedure 19 requires a person to be joined as a party in the action if: (1) "complete relief cannot be accorded among those already parties," or (2) the person has such an interest in the subject matter of the litigation that the disposition of the action in the person's absence may impair or impede the person's ability to protect their interest or leave the parties to the litigation "subject to a substantial risk of double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." M.R. Civ. P. 19(a).

21

Defendants argue that Plaintiffs' complaint challenges the validity of Resolves 2013, Chapter 62, enacted by the Maine Legislature and approved by the Governor. (Defs. Mot. Dismiss 18-19.) Therefore, according to Defendants, the State of Maine is a necessary party to this litigation. (*Id.*) As discussed above, Plaintiffs do not challenge the validity of Resolves 2013, Chapter 62, or seek any relief from the State of Maine. (2d Amend. Compl. ¶¶ 54-84.) Therefore, the State of Maine is not a necessary party to the litigation.

## IV. CONCLUSIONS

Defendants' motion to dismiss Plaintiffs' second amended complaint for failure to state a claim is granted in part, and denied in part. Defendants' motion to dismiss is granted as to Plaintiffs' second claim for relief. Defendants' motion to dismiss is denied as to Plaintiffs' first and third claims for relief.

Defendants' motion to dismiss Plaintiffs' second amended complaint for failure to join a necessary party is denied.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 3/18/16

Lance Walker
Justice, Superior Court

22